*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID TREBNIK,

        Plaintiff-Appellant,

v

KIRSTEN TREBNIK,

        Defendant-Appellee.

UNPUBLISHED
May 25, 2023

No. 360106
Oakland Circuit Court
LC No. 2019-872101-DM

Before: GLEICHER, C.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

In 2021, David Trebnik moved to modify a temporary child support order of $3,000 per month that had been entered more than two years earlier. The circuit court denied the motion and entered a final child support order for the same amount. The circuit court did not employ the correct standards or recalculate child support under the child support formula based on David's actual income. But the court properly determined that its review could only reach a certain distance back in time. We affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

David Trebnik filed for divorce from Kirsten Trebnik in April 2019.[1] The couple has one child, VT, born in 2018. David has another minor child from a previous marriage. David is in the tech industry and at the time of the divorce filing, earned a base salary of $110,000 plus commissions from Dell EMC. Kirsten is a high school teacher, earning approximately $64,000. Each owns income-generating residential rental property.

In June 2019, Kirsten filed a motion seeking interim child support. The parties were unable to agree on David's income. In August 2019, David earned a $199,000 commission following an unusually large sale. Kirsten argued that David was "on track to earn . . . $407,000" that year, while David contended that his August 2019 sale was a once-in-a-career event. Plugging her

---

[1] As the parties share a last name, we refer to the parties by their first names.

figures into the uniform child support formula (MCSF), Kirsten sought $3,700 each month in child support. Oakland Circuit Court Judge Victoria Valentine ordered David to pay $3,000 each month retroactive to July 1, 2019. The court did not explain how it reached that figure. However, when discussing the cost of childcare, the court noted that David would earn between $300,000 and $400,000 that year. Following the hearing, the court entered a written order requiring David to pay $3,000 each month "in interim child support, retroactive to July 1, 2019," and indicating that "the issue of the correct amount of child support, retroactive to July 1, 2019 is reserved for trial." A separate "temporary" child support order (UCSO) entered as well.

David filed a motion for reconsideration of the temporary or interim UCSO, which the circuit court denied as the issue would be considered at trial. However, a trial never occurred. On December 10, 2019, the parties entered a consent judgment of divorce, resolving all issues except child support. In that regard, the judgment stated: "The [UCSO] entered on October 17, 2019 shall remain in full force and effect, pending the Friend of the Court's [FOC] investigation and recommendation, when a subsequent [UCSO] will be entered." The judgment continued that uninsured medical costs would continue to be divided as provided in "[t]he October 17, 2019 temporary [UCSO] pending entry of a new child support order." The judgment further provided that "[t]he parties shall abide by the October 17, 2019 temporary [UCSO] pending entry of an order after the [FOC] child support investigation."

The court entered an order referring the child support matter to the FOC for investigation. In February 2020, the FOC issued its recommendation for a modified UCSO, finding that David's 2019 salary was approximately $330,000. Based on that figure, the FOC recommended that David pay $3,388 in monthly child support. Neither party sought entry of a new UCSO based on the February 2020 recommendation. Instead, David improperly filed a series of motions for reconsideration in the FOC.

David changed jobs twice in the following year and was unemployed for brief periods. Dell EMC terminated David's employment in February 2020. In March 2020, David filed a motion to modify the UCSO based on his unemployment, but never served the motion on Kirsten. David had accepted an offer for new employment with Otava before he filed this motion but omitted this fact from the pleading.

David was terminated by Otava on October 7, 2020, but started a new job on December 1 with Sentinel Technologies. He filed a new motion to modify in December 2020. David cited his latest employment termination as "a change in circumstances" warranting "modification of child support." He argued that childcare expenses should be removed from the child support award as he was then available to care for VT during Kirsten's work day. Plugging his new income in the MCSF, David asserted that he was required to pay only $177 each month. Again, David did not mention that he had already secured new employment.

The matter was reassigned to Oakland Circuit Court Judge Lorie Savin in January 2021. Given David's December 2020 motion, the court again referred the child support matter to the FOC, but not until June 2021. The FOC conducted a four-day hearing.

David testified that he had earned a base salary of $110,000 at Dell EMC. 2019 was his highest grossing year for commissions, yielding a salary of $332,000. In 2018, David stated that

he earned only $147,000. Dell terminated David's employment effective February 1, 2020. He secured employment with Otava in mid-March 2020, and maintained that position for six months. David testified that he earned $74,000 during that time, but a redacted W2 stated that he earned $88,000. David was unemployed for less than two months before he started a new job with Sentinel on December 1, 2020. David's base salary with Sentinel was $95,000, and he was eligible to earn an additional $150,000 in commissions. For the first 12 months of his employment, Sentinel paid David an additional $4,000 per month "to help with bridge, trying to bring on new accounts that I'm not getting commissions on."

David also testified that he owns three residential properties. He lives in one and rents the other two. He claimed that he essentially broke even on the former marital home because of gaps in occupancy, repair expenses, and high bills following an undetected water leak. David further claimed that he rented a condo to his parents at a small loss. However, David had not filed his 2019 or 2020 income tax returns and so could not place them into evidence. And David was antagonistic with Kirsten's attorney and the FOC referee during cross examination, requiring the court to mute his microphone or place him in the Zoom waiting room on several occasions. After being ordered by the referee, David presented bank statements revealing $11,000 in deposits from bitcoin and stock accounts.

Kirsten testified that she is a high school teacher. Her total income between salary and rental proceeds was $74,560 in 2019. In 2020, her total income was approximately $86,000. At the time of the FOC hearing, her annual salary was $66,688. Kirsten testified regarding her childcare costs during her work day. She further described how she averaged those costs throughout the year to avoid the need for a reconfiguration of child support each summer. Kirsten presented extensive documentation to establish her salary, rental income, and childcare costs. However, Kirsten admitted that she incurred no childcare costs between March and September of 2020 and had not notified the FOC.

The FOC recommended that retroactive to June 2021, David pay $1,354 a month in child support. That figure was based on David's 2021 income of $170,660, which included salary and rental income. The FOC recommended that David be required to pay $3,388 a month in child support from July 1, 2019 through May 2021, which was the figure given in the FOC February 6, 2020 recommendation. The FOC reasoned that this figure was supported by the information before the court when the recommendation was made and because David never properly objected to that recommendation.

Kirsten objected to the FOC's new recommendation, arguing that she was entitled to a larger amount for childcare costs. David also objected, arguing that the FOC's factual findings regarding his income were erroneous and that he was entitled to retroactive modification of his child support obligation to be calculated according to his actual income rather than the FOC's February 6, 2020 findings and recommendation.

The circuit court conducted a de novo review of the FOC's October 7, 2021 findings and recommendation on the existing record, without allowing additional evidence to be presented. In January 2022, the circuit court issued an opinion and order making the October 17, 2019 temporary UCSO the final UCSO in this case. The court stated that David was required "to demonstrate a substantial change in circumstances" to "warrant[] modifying his child support obligation."

The court noted that David offered three "theories of substantial change in circumstances": his first period of unemployment, his second period of unemployment, and his change in income. The court noted that David abandoned his claim regarding his first period of unemployment by failing to follow through on his March 2020 motion. The court found that David inaccurately stated in his December 2020 motion that he was still unemployed and did not attempt to correct the record, negating his claim of a substantial change in circumstances in that regard. The court continued that David "was not proactive in bringing a shifting theory of change in circumstances to the Court's attention. Only when presented with evidence showing that he was employed when both motions were filed, did [David] argue that" the income change between jobs amount to a substantial change in circumstances.

In relation to the change in income theory, the court found that David's "credibility is greatly diminished by his conduct throughout the proceeding." The court emphasized David's "disruptive and disrespectful" behavior as well as his "refus[al] to cooperate with basic procedure and deflect[ion of] responsibility for his own actions elsewhere." The court took special notice of David blaming opposing counsel and the court for his failure to file his tax returns. Ultimately, David's "lack of candor gives his testimony little weight with this Court." Based on the evidence presented, the court determined that David's income from employment in 2018 was $128,000, $332,000 in 2019, $120,000 in 2020, and $128,000 in 2021. The court found incredible David's explanation of his rental income (or losses) and did not assign a value to that income. And the court found insufficient evidence to add stock or bitcoin proceeds to David's income.

In denying David's motion to modify the UCSO, the court ruled:

> [David] failed to show to that his employment or income-producing endeavors substantially changed since the last child support order's entry. [David] earned $128,000 in W-2 income in 2018. Presumably, that is the information used for the child support order because the Judgment indicated that support had to be recalculated based upon his 2019 income. The evidence demonstrates that [David's] position in 2020 and 2021 were substantially like [David's] prior income, which the Court finds to be $128,000. [David] was employed in 2020 earning $120,000 and in 2021 earning approximately $128,000.

The court dismissed David's March 2020 motion as abandoned and denied David's December 2020 motion to modify the UCSO. The court then removed the "temporary" label on the October 17, 2019 UCSO, making it the final order of the court.

David now appeals.

II. ANALYSIS

We first note that David challenges the child support award dating back to July 1, 2019. There is a strong preference against the retroactive modification of child support obligations in Michigan. *Fisher v Fisher*, 276 Mich App 424, 428-430; 741 NW2d 68 (2007). "[T]he general rule is that the protection of children mandates the finality of child support obligations and child support payments." *Id*. at 429. Each child support payment is akin to a new judgment with full force and effect. MCL 552.603(2)("[A] support order that is part of a judgment or is an order in a

domestic relations matter is a judgment on and after the date the support amount is due[.]); *Harvey v Harvey*, 237 Mich App 432, 437-438; 603 NW2d 302 (1999). "The only way to 'undo' those payments is by retroactively determining that [the party] was not, in fact, under an obligation to pay them and retroactively rescinding those court orders." *Fisher*, 276 Mich App at 429-430.

Consistent with these principles, MCL 552.603(2) only permits retroactive modification of a final child support award "from the date that notice of the petition was given to the . . . recipient of support." The first notice received by Kirsten that David was challenging the child support award was December 18, 2020. While MCR 3.207(C)(4) permits a court to designate a temporary order as retroactively modifiable, a party must show good cause for relief. As David waited 10 months after the FOC's recommendation to seek relief, he cannot make a strong appeal for retroactive modification back to July 1, 2019. Accordingly, regardless of whether the circuit court erred in awarding $3,000 each month in child support in the temporary UCSO, no modification can predate December 18, 2020. Between July 1, 2019 and December 18, 2020, David was required to pay $3,000 monthly in child support. We limit our review to the imposition of child support from December 18, 2020 forward.[2]

We now consider the propriety of the court's January 2022 order. "Modification of a child support order is a matter within the trial court's discretion." *Burba v Burba (After Remand)*, 461 Mich 637, 647; 610 NW2d 873 (2000). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes" or "where the trial court misapprehends the law to be applied." *Kalaj v Khan*, 295 Mich App 420, 425; 820 NW2d 223 (2012) (cleaned up). "Whether a trial court properly operated within the statutory framework relative to child support calculations and any deviation from the child support formula are reviewed de novo as questions of law." *Peterson v Peterson*, 272 Mich App 511, 516; 727 NW2d 393 (2006).

The first question is whether the circuit court properly determined that David was required to demonstrate a substantial change in circumstances to warrant a modification rather than good cause.

MCL 552.17(1) provides that after the entry of a divorce judgment, "the court may revise and alter a judgment concerning the care, custody, maintenance, and support of some or all of the children, as the circumstances of the parents and the benefit of the children require." This Court has interpreted this provision as permitting a modification of an earlier child support order when "justified by changed circumstances." *Kosch v Kosch*, 233 Mich App 346, 350; 592 NW2d 434 (1999). See also *Holmes v Holmes*, 281 Mich App 575, 588; 760 NW2d 300 (2008) ("Therefore, [the] circuit court did not err by concluding that a change of circumstances warranted modification of defendant's monthly child support payment.). MCL 552.517b(8), however, provides, "Upon motion of a party, the court may only modify a child support order upon finding a *substantial*

---

[2] MCL 552.603b permits retroactive modification of child support if a parent "knowingly and intentionally fails to report, refuses to report, or knowingly misrepresents" his or her income to the FOC. There is no allegation against Kirsten in this regard. David's conduct, however, raises this implication.

change in circumstances . . . ." (Emphasis added.) MCL 552.517b(1) requires courts to apply this standard when considering modification of a child support order entered after June 30, 2005.

MCR 3.207(C), on the other hand, applies to temporary orders entered in domestic relations actions. Subsection (3) provides that "[a] temporary order may be modified at any time during the pendency of the case, following a hearing and upon a showing of *good cause*." (Emphasis added.) The court rule continues:

> (4) A temporary order must state its effective date and whether its provisions may be modified retroactively by a subsequent order.
>
> (5) A temporary order remains in effect until modified or until the entry of the final judgment or order. [MCR 3.207(C).]

The phrase "good cause" is not defined in the court rule. In relation to other court rule provisions, this Court has defined "good cause" as "a legally sufficient or substantial reason." *In re Utrera*, 281 Mich App 1, 11; 761 NW2d 253 (2008). See also *Sanders v McLaren-Macomb*, 323 Mich App 254, 271; 916 NW2d 305 (2018).

No final child support order entered in this case until January 11, 2022. In the fall of 2019, the court and the parties intended to resolve the child support issue at trial; no trial occurred. The December 2019 consent judgment of divorce reserved entry of a final UCSO until the FOC could investigate. Although the FOC recommendation was more favorable to Kirsten, she did not seek entry of a final UCSO. David, who was then without counsel, filed a series of improper motions in the FOC to challenge its recommendation and then filed a motion in the circuit court to set it aside, but never served his motion on Kirsten or noticed the motion for a hearing. As a result, the temporary UCSO remained in place. David's December 2020 motion was the first to properly challenge the temporary order and seek entry of a permanent one.

Given this unusual procedural history, the circuit court was required by MCR 3.207(C)(3) to determine whether good cause existed to modify the existing temporary order. The circuit court erred in requiring David to establish a substantial change in circumstances. On remand, the circuit court must consider whether there is good cause to modify the UCSO from December 18, 2020 forward.

Additionally, we must remand because the circuit court did not follow the requirements of MCL 552.605 in deviating from the MCSF and made factual errors and omissions by selecting an arbitrary number for the child support award.

We first highlight a factual error in the circuit court's final opinion and judgment entered on January 11, 2022. "We review for clear error . . . the trial court's factual findings underlying its determination of a child support award." *Stallworth v Stallworth*, 275 Mich App 282, 284; 738 NW2d 264 (2007). In the January 11 opinion, Judge Savin stated: "[David] earned $128,000 in W-2 income in 2018. Presumably, that is the information used for the child support order because the Judgment indicated that support had to be recalculated based upon his 2019 income." This presumption was incorrect. Rather, Kirsten's attorney performed calculations under the MCSF assuming that David would earn $407,000 in 2019, and opined that David would be required to

pay $3,700 each month in child support. David objected that his August 2019 commission was from a once-in-a-career sale and that his 2019 income would not exceed $320,000. When Judge Valentine ordered David to pay $3,000 each month, she did not explain how she reached that figure, but later in the hearing, Judge Valentine noted that David would earn between $300,000 and $400,000 in 2019. It is clear on the record that Judge Valentine did not calculate David's temporary child support obligation based on his 2018 salary of $128,000. (And David actually testified that he earned $147,000 in 2018.) The $3,000 figure was an estimation based on the court's conclusion that David would earn $300,000 to $400,00—less than predicted by Kirsten and her counsel. It had no foundation in the MCSF.

Judge Savin compounded the error by continuing the earlier child support amount without considering a proper calculation under the MCSF. This error must be corrected on remand. David's child support obligations beginning December 18, 2020 must be based on the MCSF.

MCL 552.605(2) requires courts to calculate child support according to the MCSF. *Borowsky v Borowsky*, 273 Mich App 666, 672-673; 733 NW2d 71 (2007). "A trial court must strictly comply with the requirements of the MCSF in calculating the parents' support obligations unless it 'determines from the facts of the case that application of the child support formula would be unjust or inappropriate . . . .' " *Id.* at 673, quoting MCL 552.605(2). The court here made no finding that application of the MCSF was unjust or inappropriate. As such, child support had to be determined based on a properly calculated MCSF.

"The first step in determining the parents' support obligation under the MCSF is to determine each parent's net income in order to establish, as accurately as possible, the monies available to support the children." *Borowsky*, 273 Mich App at 673. See also 2021 MCSF 2.01. "Net income" is defined as "all income minus the deductions and adjustments permitted by" the child support manual. 2021 MCSF 2.01(A). Income includes not only salary, but also "commissions, bonuses, or other monies from all employers," 2021 MCSF 2.01(C)(1), rental proceeds, 2021 MCSF 201(C)(2), and any other "source of income," 2021 MCSF 2.01(C)(8), which would include investment and bitcoin proceeds.

To this end, the court must have a complete picture of the parties' incomes. Neither parties' income is tied solely to their salaries. The court acknowledged that both parties earn income from rental properties. David also earned income through investments and bitcoin transactions. David prevented the FOC and the court from calculating his rental, investment, and bitcoin income by withholding documentation. The court responded by simply not assigning a value to that income. On remand, the court must order David to present a more thorough accounting, preferably through his income tax forms. If David does not comply with the court's order, or the court believes that David's accounting is not accurate, the court must impute income from these sources. A party cannot be permitted to avoid calculation of his true income to the detriment of his children.

Ultimately, the court could not modify the amount of child support ordered and due before December 18, 2020, and we affirm the circuit court's denial of David's motion to modify in that regard. The court erred, however, in maintaining the temporarily set child support figure without adherence to the MCSF. Accordingly, we must vacate the court's order to the extent it denied David's motion to modify the UCSO after December 18, 2020. On remand, the court must order

the presentation of accurate information regarding the parties' incomes and calculate a child support award consistent with the MCSF.

We affirm in part, vacate in part, and remand for further consideration consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado